UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS P. ATHRIDGE *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>JORGE IGLESIAS *et al.*,<br><br>    Defendants. | Civil Action No. 89-1222 (JMF) |

| | |
|---|---|
| THOMAS P. ATHRIDGE *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>HILDA RIVAS,<br><br>    Defendant. | Civil Action No. 92-1868 (JMF) |

**MEMORANDUM OPINION**

Currently pending before me and ready for resolution is the issue of whether, given a January 12, 2005 jury verdict against defendants, plaintiffs are entitled to post-judgment or pre-judgment interest dating back to November 8, 1996, when this court entered judgment and an award of damages in favor of plaintiffs and against the driver of defendants' car. For the reasons stated herein, this court will enter final judgment and award plaintiffs $5,510,010.78 in damages but will not award any interest dating back to the 1996 judgment against Jorge.

**I.    BACKGROUND**

This case has a long, complicated history. In July 1987, Jorge Iglesias ("Jorge") drove a

car belonging to his aunt and uncle ("the Rivases") while they were in South America, and he collided with a young man named Thomas Athridge ("Tommy"). Tommy and his parents ("plaintiffs" or "the Athridges") filed several lawsuits, naming as defendants Jorge, the Rivases, the restaurant owned by the Rivases, and two insurance companies.

In July 1995, Judge Thomas Penfield Jackson granted summary judgment in favor of all defendants except Jorge. The remaining claim, Tommy's negligence action against Jorge, was then transferred to Judge Harold Greene. After a bench trial, Judge Greene issued an opinion finding that Jorge was negligent, that his negligence proximately caused the injuries Tommy suffered, and that Jorge had the last clear chance to avoid the accident but failed to take it. Judge Greene awarded $5,510,010.78 to the Athridges, and the judgment was summarily affirmed on appeal. Athridge v. Iglesias, 950 F. Supp. 1187 (D.D.C. 1996), aff'd without opinion, 1997 WL 404854 (D.C. Cir. June 30, 1997). After entry of the judgment against him, Jorge declared bankruptcy. Aetna Insurance Company ("Aetna"), Jorge's insurer, denied coverage, pending further proceedings in plaintiffs' lawsuit against Aetna. Accordingly, plaintiffs' judgment against Jorge has remained completely unsatisfied.

In the meantime, Tommy appealed from Judge Jackson's July 19, 1995 grant of summary judgment against all defendants except Jorge. The Court of Appeals affirmed the award of summary judgment as to all defendants, except the Rivases and their restaurant. Upon remand, the parties conducted additional discovery and filed cross-motions for summary judgment.

In 2002, in the case between the Athridges and the Rivases, I concluded that there was no genuine issue of material fact as to Jorge's having the Rivases' consent to drive their car, but

the Court of Appeals reversed that determination and remanded the case for a jury trial. Athridge v. Rivas, 312 F.3d 474 (D.C. Cir. 2002). A trial was held in January 2005, and the following two issues were presented to the jury: (1) whether the defendants established by a preponderance of the evidence that they did not consent to Jorge's use of their car on the day of the accident, and (2) whether the plaintiffs established by a preponderance of the evidence that the defendants were negligent in permitting Jorge access to the keys to their car and, if so, whether their negligence proximately caused the accident.

On January 12, 2005, the jury returned a verdict in favor of plaintiffs and against the Rivases on both counts. Although the parties have stipulated that the Rivases are bound by Judge Greene's findings as to Jorge's negligence and the amount of damages sustained by plaintiffs, they dispute whether plaintiffs are entitled to interest dating back to the 1996 judgment.

## II.   THE PARTIES' ARGUMENTS

Plaintiffs argue that they are entitled to an award of pre-judgment interest on three grounds. First, based on the 2005 jury verdict against the Rivases, plaintiffs argue that the Rivases are statutorily and jointly and severally liable for the judgment against Jorge. Thus, according to plaintiffs, the Rivases are liable for post-judgment interest, dating back to the 1996 judgment, pursuant to 28 U.S.C. § 1961. Plaintiffs' Memorandum in Support of an Award of Interest ("Pls.' Mem.") at 3-4. Alternatively, plaintiffs argue that, under D.C. Code § 15-108, they are entitled to pre-judgment interest on the amount awarded by Judge Greene because that amount is a liquidated debt and interest is payable by law or usage. Id. at 5-7. Finally, plaintiffs argue that the court should exercise its discretion and award plaintiffs pre-judgment interest in

3

order to compensate plaintiffs for their inability to use the funds since the time of the 1996 judgment. Id. at 7-9.

Defendants oppose any award of pre-judgment interest for several reasons.[1]  Most importantly, to date, no final judgment has ever been entered against the Rivases.  They also argue that the 1996 judgment was entered against Jorge alone, and any debt he had was expunged by his filing of bankruptcy. Defendants' Law Memorandum re Plaintiffs' Claim of Pre-Judgment Interest ("Defs.' Mem.") at 2.  Finally, the Rivases contend that Judge Greene's findings as to damages do not constitute a liquidated debt. Id. at 2.

### III. ANALYSIS

#### A. Post-Judgment Interest Under 28 U.S.C. § 1961

Under 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).  As indicated above, on November 8, 1996, this court entered judgment in the amount of $5,510,010.78 against Jorge, the driver of

---

[1] Defendants make three arguments of which the court will dispose summarily.  First, defendants claim that plaintiffs did not sue for pre-judgment interest. Defs.' Mem. at 2.  However, in Civ. A. No. 92-1868, plaintiffs demanded judgment in the amount of $10 million "besides interest and court costs" on behalf of Thomas P. Athridge and judgment in the amount of $1.5 million "besides interest and court costs" on behalf of his parents. Complaint at 8.  As for defendants' argument that the court of appeals' reversals and remands, dated April 21, 1988 and December 17, 2002, make no provisions for the award of pre-judgment interest, neither of these decisions discussed the issue of interest, and they simply cannot be read to preclude any such relief.  Finally, defendants' argument that "the element of pre-judgment interest must be a factual finding by a [c]ourt or [j]ury" is entirely unclear. See Defs.' Mem. at 2.  If defendants mean to argue that the jury should have included interest in its award to plaintiffs when it rendered its 2005 verdict, the argument makes no sense because the question of damages was not before the jury.  Similarly, if defendants mean to argue that Judge Greene should have incorporated an interest amount into his award of damages, that argument is illogical because Judge Greene issued his opinion almost 10 years before the defendant Rivases were found liable for the accident.

the vehicle involved in the accident. At the time judgment was entered, plaintiffs' case against the owners of the vehicle, *i.e.,* the Rivases, had been dismissed by Judge Jackson and was on appeal.

The District of Columbia's Motor Vehicle Safety Responsibility Act ("MVSRA"), D.C. Code § 50-1301.08, provides:

> Whenever any motor vehicle, after the passage of this chapter, shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner.

D.C. Code § 50-1301.08.

Relying on the presumptions created by the MVSRA, plaintiffs argue that they are entitled to post-judgment interest, beginning on the date of the 1996 judgment. Plaintiffs contend:

> [W]hen Judge Greene entered judgment against Iglesias, [d]efendants became statutorily liable for that judgment subject to their affirmative defense of lack of consent. As a prima facie matter then, liability and damages as to [d]efendants were fully established at the time of the judgment against Iglesias. Indeed, it has never been disputed that [p]laintiffs had established a complete and liquidated claim against [d]efendants. The only dispute was [d]efendants' affirmative defense.
> When the jury rejected that defense, [d]efendants became fully liable for that judgment.

Pls.' Mem. at 3-4.

In the court's view, there are significant problems with plaintiffs' analysis. As the D.C.

5

Circuit has stated in this case, the MVSRA creates a "powerful presumption" such that proof of ownership of a car is prima facie evidence that the driver acted with the owner's consent and therefore acted as the owner's agent. <u>Athridge v. Rivas</u>, 312 F.3d 474, 478 (D.C. Cir. 2002). However, this presumption is rebuttable, and owners are not strictly liable for any and all accidents in which their cars are involved. Indeed, once the case goes to trial, the owners will be liable only if they fail to establish non-consent by a preponderance of the evidence. <u>Athridge v. Rivas</u>, 355 F. Supp. 2d 230, 233 (D.D.C. 2005).

There may be other situations where one party is automatically vicariously liable for another's action, and the judgment against one can bind the other unequivocally. Plaintiffs proceed upon that theory, arguing that the MVSRA made the Rivases liable for Jorge's behavior the moment Judge Greene held Jorge liable. In this case, however, that is not what happened at all. The judgment against Jorge permitted the Athridges to proceed against the Rivases, forcing them to prove lack of consent. But, unless and until the jury rejected their affirmative defense, liability could not be imposed. If one has to find a similar legal concept, it might be liability turning on the fulfillment of a condition. The Rivases' liability was ultimately determined by the jury's acceptance or rejection of their affirmative defense, and the rejection did not occur until the 2005 verdict. Accordingly, it is impossible for interest to run on a non-existent 1996 "judgment" against the Rivases when their liability did not come into existence until 2005.

As for the Rivases being "bound" by Judge Greene's findings against Jorge and calculation of damages, it is undisputed that, once the jury rejected the Rivases' defense of non-consent, the Rivases and Jorge were deemed to have had a principal-agent relationship. Whether that relationship was sufficiently close for the Rivases to be bound, as Jorge's privies, by any

determinations and judgments rendered against him need not be decided by this court because the parties have stipulated that they are so bound.  Regardless of whether the Rivases are obliged to pay the $5.5 million judgment because of their privity relationship or because of their stipulation, however, there is a significant problem for plaintiffs: the fact that the Rivases are bound by Judge Greene's findings and conclusions does not necessarily mean that they are required to pay interest from the date of the initial judgment against Jorge when, at that point, they had been dismissed from the case.

Indeed, when a party is bound by a prior judgment under res judicata or claim preclusion, there is an "absolute bar to a subsequent action upon the same claim between the same parties or those in privity with them."  Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd., 31 F.2d 76, 82 (D.C. Cir. 1963).  When a party is bound under collateral estoppel or issue preclusion, a judgment "operates as an estoppel as to those matters in issue upon the determination of which the prior finding was rendered."  Id.

Again, the court recognizes that the parties have *stipulated* that they are bound by Judge Greene's prior findings of negligence and damages.  In response to the court's July 17, 2003 inquiry as to whether plaintiffs wanted to re-brief two pending motions, including their motion for summary judgment, plaintiffs advised the court that they did *not* wish to re-brief their motion for summary judgment because the two issues raised therein had been resolved.  Specifically, in a consent motion, plaintiffs stated:

> Plaintiffs' motion for summary judgment raised two issues, [including whether] [d]efendants are by law estopped to contest the negligence of Jorge Iglesias and the damages proximately caused by his negligence in the amount of $5,510,010.78. . . .

> As to [this] issue, [d]efendants have agreed that they are bound by the prior determinations of Jorge Iglesias' negligence and the quantum of damages proximately caused by his negligence.

Plaintiffs' Consent Motion to Set Briefing Schedule ("Consent Mot.") at 2.

In the absence of any representation that the parties agreed to be bound by the amount of damages *and all interest that has accrued from the date of the original finding of damages,* it would defy logic to define what it means to be bound by a prior judgment in any way other than the definition already offered by the law.  Neither of these doctrines indicates that, when a party is bound by the prior determination of an issue or claim, the party is responsible for the interest that has accrued from the date of the original disposition.  It would be illogical and improper to reach any other conclusion.

Moreover, as the plaintiffs themselves acknowledge, "when the jury rejected [the Rivases'] defense, [d]efendants became fully liable for that judgment." Pls.' Mem. at 4.  The jury did not reject the Rivases' defense of non-consent, however, until January 2005.  At that point, they became liable for the $5.5 million judgment, as they had stipulated in the event of a jury verdict against them.  Simply put, therefore, it would be unfair to make the Rivases pay interest on a judgment rendered against the driver of the car when no liability attached *to the Rivases* until January 2005.

By the same token, I appreciate the fact that it seems inconsistent to say that Jorge was acting as the Rivases' agent when the accident occurred, but because the finding of agency was not made until many years later, the principals will not be held responsible for the interest that has accrued on a judgment against their agent.  After all, the fact that there was no legal

establishment of the agency relationship until 2005 does not negate the fact that the Rivases and Jorge had a principal-agent relationship *at the time of the accident.* But, that reality actually provides additional support for my conclusion. Indeed, no one is contending that interest is due from the date of the accident, which is when the principal-agent relationship had to have existed. What is in dispute is the date upon which the Rivases became liable for the plaintiffs' damages.

Again, although plaintiffs insist that the Rivases incurred statutory liability for the accident in 1996, when Jorge was found liable for the damages plaintiffs incurred, that simply is not the case. At that point in time, even if there was prima facie evidence that Jorge was acting as their agent because ownership of the car was undisputed, whether they had given express or implied consent was hotly contested and far from established. Under these circumstances, plaintiffs' argument goes too far, and despite plaintiffs' protestations to the contrary, the Rivases did not become liable for the accident until the jury returned a verdict against them in 2005.

Finally, I must address plaintiffs' point that, under Keitz v. National Paving and Contracting Company, 136 A.2d 229 (Md. 1957), defendants accepted the risk that Judge Jackson's decision to dismiss the case against them would be overturned on appeal and they would be bound by the amount of damages determined in the case against their agent. In Keitz, plaintiff was injured when her bus was struck by a truck. She sued the driver of the truck, the owner of the truck, and the company for whom the truck was hauling at the time of the accident. The case went to trial, and at the conclusion of plaintiff's case, the defendant company was granted a directed verdict. The jury then returned a verdict in favor of plaintiff and against both the driver and owner of the truck. Later, the judgment in favor of the defendant company was reversed, and plaintiff sought to preclude the defendant company from re-litigating the issues of

negligence and damages that had been determined in the earlier suit. The court then held that, if the defendant company was found to be vicariously liable for the acts of the driver, the defendant would be bound by the previous judgment against the driver as to the issues of negligence and damages. Keitz, a 1957 case from Maryland that is not binding on this court, says nothing about whether plaintiffs would be entitled to interest from the date of the original judgment, and I will not read it to mandate the result plaintiffs demand here.

    **B.**    **Pre-Judgment Interest Under D.C. Code § 15-108**

D.C. Code § 15-108 states:

> In an action in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid.

D.C. Code §15-108. This statute is remedial and should be generously construed so that the wronged party can be made whole. District Cablevision Ltd. P'ship v. Bassin, 828 A.2d 714, 732 (D.C. 2003).

However, there are several requirements that must be met in order for the statute to apply. As stated plainly by the code, the action must be one to recover a liquidated debt, and the interest must be payable on the debt by contract or by law or usage. If these factors are met, pre-judgment interest will be awarded on the principal debt from the time it was due and payable.

    *1.*    *Liquidated Debt and Time the Debt Became Due and Payable*

A liquidated debt must be an easily ascertainable sum certain at the time it arose. M.

Pierre Equip. Co., Inc. v. Griffith Consumers Co., 831 A.2d 1036, 1041 (D.C. 2003). Certainly, the amount of damages incurred by the plaintiffs was an ascertainable sum once Judge Greene issued his November 8, 1996 opinion. However, the parties have not always agreed as to whether that "sum certain" would be binding on the Rivases in the event of a jury verdict finding them statutorily liable for the accident. In fact, the Rivases have wavered several times, initially agreeing that they would be bound to that amount of damages, then arguing that they were not so bound, and finally stipulating that they are bound to Judge Greene's calculation.

In addition, once judgment was entered against the defendant in that case–Jorge Iglesias–that "debt" was "due and payable" by Jorge alone. At that point in time, there was no judgment against the Rivases. Although the statute contains a presumption that the Rivases consented to Jorge's use of their car–and Jorge was therefore acting as their agent–there had simply been no finding that the Rivases were liable for plaintiffs' damages. Accordingly, the amount was not due and payable by the Rivases in 1996.

In addition, plaintiffs cannot ignore that the statute requires that the lawsuit be "an action . . . to recover a liquidated debt." I have already rejected plaintiffs' contention that this lawsuit was an indemnification action. Memorandum Opinion, Jan. 21, 2004, at 4-5. In addition, in the court's view, this lawsuit was brought not to "recover a liquidated debt," but to seek entry of a judgment in which the Rivases, as owners of the car, would be held liable for the horrible accident that occurred when their nephew took their vehicle and struck the minor plaintiff.

    2.    *Payable by Contract or by Law or Usage*

Even if the 1996 judgment represented a liquidated debt due and payable by the Rivases

at the time it was entered, plaintiffs have failed to show that the debt is payable by contract or by law or usage. Indeed, it is undisputed that the Rivases have never had a contractual obligation to pay any pre-judgment or post-judgment interest. And, a review of the case law indicates that such interest is not payable by law or usage. As stated by the D.C. Court of Appeals, law or usage refers to "what is customary under similar or comparable circumstances." Riggs Nat'l Bank v. District of Columbia, 581 A.2d 1229, 1255 (D.C. 1990). However, all of the cases cited by plaintiffs represent very different factual scenarios from the case at bar. The following chart summarizes the cases plaintiffs cited in their brief:

| Case | Facts | Court's Ruling |
| --- | --- | --- |
| District Cablevision Ltd. P'ship v. Bassin, 828 A.2d 714 (D.C. 2003) | Class of plaintiffs sued for a liquidated debt, namely the sum total of invalid late fees they had paid to District Cablevision. | Plaintiffs were entitled to pre-judgment interest on the overcharge damages that the class was awarded. |
| Riggs Nat'l Bank v. District of Columbia, 581 A.2d 1229 (D.C. 1990) | At issue in this case was approximately $1.7 million of dormant deposits which had no known owners or belonged to non-residents of the District of Columbia, as well as funds deposited by customers to cover official checks which were never presented for payment. By operation of law, the District was substituted as custodian of the abandoned property at issue. Despite its demands, Riggs Bank declined to report and deliver the funds because Riggs believed it had no statutory obligation to do so. | The District, not Riggs Bank, had the statutory right to possess the funds. At the moment Riggs refused to turn over those funds, it became indebted to the District. In the simplest terms, Riggs was obliged to pay money to the District. When it failed to do so, it became a debtor and the District became its creditor, and it owed interest on the funds beginning on the date these funds should have been delivered to the District. |

| Nationwide Mutual Ins. Co. v. Bradby, Inc., Civ. A. No. 89-1525, 1990 U.S. Dist. LEXIS 1729 (D.D.C. 1990) | General contractor's insurer sued subcontractor for indemnification on settlement of stipulated damage caused by subcontractor's acknowledged negligence. | Subcontractor liable for settlement amount plus pre-judgment interest from date insurer settled because it settled per general contractor's contract with its customer. |
|---|---|---|
| Nolen v. District of Columbia, 726 A.2d 182 (D.C. 1999) | Plaintiff, who settled civil rights action against District of Columbia but did not receive settlement payment as provided by agreement, brought breach of contract action against District. Plaintiff sought to recover the original amount of the settlement plus interest, costs, and attorney's fees. | The trial court's failure to look beyond the terms of the contract when applying D.C. Code § 15-108 was error. The case was therefore remanded for a determination of whether common law or customary usage provides for the payment of pre-judgment interest on a liquidated debt in cases "analogous in principle" to the breach of a settlement agreement. |
| Li v. Lee, 817 A.2d 841 (D.C. 2003) | Former wife sought to have former husband held in contempt of court for failing to pay over $12,000 in alimony. | Because the trial court did not require that the appellee pay either pre- or post-judgment interest, it effectively denied the appellant the full value of the money owed to her. |
| District of Columbia v. Potomac Elec. Power Co., 402 A.2d 430 (D.C. 1979) | Electric utility filed suit against District of Columbia for past-due electricity bills. | Regardless of the District's fault or innocence, the electric company was without the use of certain monies from the days on which the sums fell due, with the District correspondingly having the use of such funds. Because this was a liquidated debt that meets the requisites of § 15-108, pre-judgment interest shall be awarded. |

| | | |
|---|---|---|
| Bragdon v. Twenty-Five Twelve Associates Ltd., 856 A.2d 1165 (D.C. 2004) | Personal representative of estate of resident brought action against community residence facility for overcharges, alleging breach of contract and fraud. | In order to fully compensate appellant for the overpayment to the residence facility and the resulting deprivation of the use of that money, appellant was entitled to pre-judgment interest. |

In each of these cases, the *original debt* was due and payable *by the defendant*. None of these cases involves a situation analogous to this case in which the debt became due from an individual defendant who was, years later, found to have been acting as the agent of other defendants who had previously been dismissed from the case. Thus, plaintiffs' statement that they are not aware of any D.C. Court of Appeals decisions denying the award of pre-judgment interest under the statute because it was not payable by law or usage holds little water. See Pls.' Mem. at 6-7. Although "a plaintiff is not required to demonstrate a customary usage of awarding pre-judgment interest on the specific type of claim at issue, . . . 'such interest [must have] been held to be recoverable in a case which [is] viewed as analogous in principle.'" Nolen v. District of Columbia, 726 A.2d 182, 185 (D.C. 1999) (quoting Riggs, 581 A.2d at 1255). Simply put, the cases cited by plaintiffs represent very different situations and do not govern the issue in this case.

    3.  *Remedial Nature of the Statute*

That being said, this court fully understands that D. C. Code § 15-108 was designed so that plaintiffs would be fully compensated for the damages they suffered. The case law instructs that "a statute providing for pre-judgment interest is remedial and should be generously construed so that the wronged party can be made whole." Riggs, 581 A.2d at 1255. Case law

also indicates that, "[i]f a debt ought to be paid at a particular time, and is not, owing to the default of the debtor, the creditor is entitled to interest from that time by way of compensation for the delay in payment." Nolen, 726 A.2d at 185 (citing Young v. Godbe, 82 U.S. (15 Wall.) 562, 565-566 (1872) (quoted in Riggs, 581 A.2d at 1253)) (further citations omitted). "At common law, the right to receive interest on a liquidated debt accrued [on] the date the debt was due. . . . Denial of pre-judgment interest on such debts would . . . further encourage delay in paying liquidated claims, thus permitting free use of the money for the time period consumed in litigation." McIntosh v. Aetna Life Insurance Co., 268 A.2d 518, 521 (D.C.1970) 521 (footnote omitted).

Here, it is certainly unfortunate that plaintiffs have had to wait so many years before they had their day in court against the defendant Rivases, not only because of the delay in getting a verdict, but also because of the delayed payment of damages. In the usual tort case, where there has been no prior determination of damages, a jury verdict awarding damages is "calculated to compensate the plaintiff in an amount that will make her whole as of the date of that verdict." Bell v. Westinghouse Electric Corp., 507 A.2d 548, 555 (D.C. App. 1986). Thus, when Judge Greene determined the amount of damages incurred by plaintiffs, he calculated the amount as of November 8, 1996, not 2005.

That being said, it does not change the fact that the parties stipulated that the amount of damages for which defendants were responsible was $5.5 million. Consent Mot. at 2. Nor does it change the fact that plaintiffs had no right to be paid $5.5 million–from the Rivases–until there was a factual finding holding them liable for the accident and the damages that the minor plaintiff sustained. Accordingly, the Rivases were not enjoying the use of money that they owed

plaintiffs during the course of the litigation because *they did not owe the money until the 2005 verdict against them was rendered.*

      **C.**      **Exercise of Discretion to Award Pre-Judgment Interest**

In support of their request that the court exercise its discretion to award pre-judgment interest, plaintiffs cite Duggan v. Keto, 554 A.2d 1126 (D.C. 1989), Riggs National Bank of Washington, D.C. v. District of Columbia, 581 A.2d 1229 (D.C. 1990), Federal Marketing Co. v. Virginia Impression Products Co., Inc., 823 A.2d 513 (D.C. 2003), and Bell v. Westinghouse Electric Corp., 507 A.2d 548 (D.C. App. 1986). All of these cases, except Riggs,[2] discuss pre-judgment interest in light of D.C. Code § 15-109.[3] That statute states:

> In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff. In an action to recover damages for a wrong the judgment for the plaintiff shall bear interest.

D.C. Code § 15-109.

Later in their brief, in addressing defendants' argument that an award of pre-judgment interest must be made as a factual finding by a court or jury, plaintiffs insist that "[t]his is true . . .

---

[2] In Riggs, the court discusses in detail the application of D.C. Code § 15-108 to the case at bar. Riggs, 581 A.2d at 1254-55.

[3] Duggan also discusses D.C. Code § 15-108 briefly, but dismisses it because damages for conversion are not a liquidated debt, especially when the date of conversion and the value of the converted property are in dispute. Duggan, 554 A.2d at 1139.

16

only under D.C. Code § 15-109." Pls.' Mem. at 10.  Plaintiffs then argue that D.C. Code § 15-509 only applies to contract cases and is therefore inapplicable in this case.

Accordingly, it seems that plaintiffs are arguing, on one hand, that D.C. Code § 15-109 does not apply to this case, but case law interpreting this statutory provision does.  The case law interpreting D.C. Code § 15-109 makes clear that, although pre-judgment interest in tort actions is neither authorized nor forbidden by statute, courts may exercise their discretion to award pre-judgment interest in actions for conversion. Duggan, 554 A.2d at 1140.  The court explained:

> The purpose of any award of damages for conversion, of course, is to provide to the injured party full compensation for his or her actual loss.  Given that premise, the Mearns case, [which established the standard for calculating damages in a conversion action], and the lack of any statutory prohibition, we hold that pre-judgment interest may be included as part of the damages in an action for conversion to the extent that it will make the injured party whole.

Id. at 1140.

Accordingly, the Duggan court based its decision, in part, on the fact that common law allowed for pre-judgment interest in conversion actions. See Duggan, 554 A.2d at 1140.  In a footnote, it also noted that "pre-judgment interest is not unknown in other types of tort actions in the District of Columbia." Id. at 1140 n.17 (citing District of Columbia v. Robinson, 180 U.S. 92, 107-108 (1901); Washington & Georgetown R.R. v. Hickey, 12 App. D.C. 269, 275-276 (1898)).

Despite this allusion to the possibility that pre-judgment interest may be appropriate in various types of tort actions, it is unclear whether the court may award pre-judgment interest in a negligence action, as compared to a conversion action. Williams Enters., Inc. v. Sherman R.

17

Smoot Co., 938 F.2d 230, 238 (D.C. Cir. 1991). See also Kuwait Airways Corp. v. American Sec. Bank, N.A., 890 F.2d 456, 465-66 (D.C. Cir. 1989) (stating that Duggan, and the cases cited therein, clearly allow for an award of pre-judgment interest in conversion cases). In Williams, the D. C. Circuit specifically stated that "[i]t remains unclear whether prejudgment interest is available in a negligence action." Williams Enters., 938 F.2d at 238. However, the court did not resolve the ambiguity because District of Columbia law unequivocally allowed pre-judgment interest in contract actions, and in addition to a negligence claim, a breach of contract claim was before the court. Id.

Accordingly, it is entirely uncertain whether the court may award pre-judgment interest in the case at bar, where plaintiffs have prevailed on a negligence claim and on a statutory claim that existed only because Jorge had negligently operated the Rivases' car. Even if the court could award pre-judgment interest under D.C. Code § 15-109 in these circumstances, however, it must be emphasized that it is within the court's discretion to do so.

Finally, the court notes that, in considering the fairness and equities of the award, the D.C. Court of Appeals has stated that the court "usually should award 'delay damages' in [breach of contract cases involving unliquidated claims] 'absent some justification for withholding such award.'" Fed. Marketing Co. v. Virginia Impression Prods., 823 A.2d 513, 532 (D.C. App. 2003) (quoting Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 657 (1983)). Assuming that this rule applies here, in a negligence case, there is a significant justification for declining an award of delay damages from the date of the 1996 judgment. As explained in detail above, the Rivases became liable for the judgment in 2005, not 1996, and it would be unfair to force the Rivases to pay interest on the intervening nine years. In addition, to say that the Rivases had use of money

that belonged rightfully to plaintiffs, not the Rivases, from 1996 until 2005 ignores the fact that they had no obligation to pay the $5.5 million until entry of final judgment against *them*. For these reasons, I will not exercise my discretion to award pre-judgment interest from the date of the November 8, 1996 judgment.

## IV.   CONCLUSION

For the foregoing reasons, the clerk will enter judgment in the amount of $5,510,010.78, in favor of plaintiffs and against the defendant Rivases.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: